```
                     UNITED STATES DISTRICT COURT
                       DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA       :
                               :
     v.                        :    Crim. NO. 3:99cr264(AHN)
                               :
QUINNE POWELL                  :
                               :
```

## RULING ON MOTION FOR NEW TRIAL

On June 3, 2005, a jury convicted defendant Quinne Powell ("Powell") on eight counts: Count One, racketeering, in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c); Count Two, RICO conspiracy, in violation of 18 U.S.C. § 1962(d); Counts Three, Four, and Six, conspiracy to possess with intent to distribute and to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1)(B) and (b)(1)(A) and 21 U.S.C. § 846; and Counts Nine and Twelve, Obstruction of Justice for witness tampering, in violation of 18 U.S.C. § 1512(b)(3); Count Thirteen, conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(a)(1).  Following his conviction, Powell filed the instant motion for a new trial under Fed. R. Crim. P. 33.  The court held oral argument on the motion on December 21, 2005, and orally denied the motion before sentencing Powell.  This ruling provides a more detailed explanation of the court's decision to deny Powell's motion.

## STANDARD

Under Fed. R. Crim. P. 33(a), this court "may vacate any judgment and grant a new trial if the interest of justice so

requires." Although this court has broad discretion in considering a motion for a new trial, it should exercise its authority under Rule 33 "sparingly" and in "the most extraordinary circumstances." United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 2001) (quoting United States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992)). In considering this motion, the court must "defer to the jury's resolution of conflicting evidence and assessment of witness credibility," and, therefore, "[i]t is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment." Id. at 133-34 (quoting Sanchez, 969 F.2d at 1414). "The ultimate test . . . is whether letting a guilty verdict stand would be a manifest injustice." Id. at 134. There must be a real concern that an innocent person may have been convicted. See id. The defendant bears the burden of persuading the court that a new trial is necessary and appropriate. United States v. Sasso, 59 F.3d 341, 350 (2d Cir. 1995).

### DISCUSSION

Powell contends that he is entitled to a new trial on four different grounds. First, he contends that he was prejudiced by the court's admission of physical evidence related to the P.T. Barnum drug trafficking conspiracy ("the Barnum Conspiracy"), the activities of Lonnie and Lance Jones ("the Jones Brothers"), and the heroine seized by the New York Police Department in the Bronx

("the Bronx seizure"). Second, Powell maintains that the RICO predicate of conspiracy to murder the Trumbull Gardens Terrace gang members ("Terrace Crew members") is not supported by the evidence and is inconsistent with the jury's verdicts on other counts. Third, he argues that racketeering act 5 and his conviction on count nine, which both involve obstructing justice by tampering with a witness, are not supported by the evidence. Finally, he contends that the government failed to prove at trial that the cocaine seized was crack cocaine. The government chose not to brief the first three grounds Powell asserted, but did challenge the fourth ground, arguing that it need not introduce results of scientific tests to establish that the substance seized was, in fact, crack cocaine.[1] After reviewing these arguments, the evidence adduced at trial, and the law, the court concludes that none of Powell's claims entitle him to a new trial under Rule 33(a).

---

[1] The government's Memorandum of Law in Opposition to Defendant Quinne Powell's Motion for Judgment of Acquittal [dkt. # 1986] makes no substantive arguments, but only refers the court to the government's memorandum [dkt. # 1974] regarding the motion for acquittal, and alternatively a new trial, filed by Powell's co-defendant, Damon Walker. The government's memorandum regarding Walker, however, simply does not address the first three grounds for acquittal cited by Powell.

A.  <u>Admission of Evidence of the Barnum Conspiracy, the Jones Brothers, and the Bronx Seizure</u>

Powell first argues that the court erred in admitting evidence of the Barnum Conspiracy, the activities of the Jones Brothers, and the Bronx seizure because "the government failed to show any evidence of [a] nexus between Powell and these defendants (and criminal activity)."  Powell summarily complains that the court admitted "physical evidence from the Jones [Brothers] (and the P.T. Barnum development) guns, bullet proof vests, masks and other contraband items," and that this evidence was "damaging and prejudicial."  Although the government offers no response to Powell's claims, the court nevertheless finds that this evidence was properly admitted.

Powell's generalized objections to the admission of evidence of the Barnum Conspiracy, the activities of the Jones Brothers, and the Bronx seizure can be addressed together because Powell, in essence, complains that he was prejudiced by the admission of evidence relating to the activities of his alleged coconspirators.  It is well-settled, however, that a defendant need not join in every unlawful objective of a conspiracy for the defendant to be considered a member of the conspiracy, as long as the defendant shared "some knowledge of the conspiracy's unlawful aims and objectives."  <u>United States v. Salameh</u>, 152 F.3d 88, 147 (2d Cir. 1998)(citing <u>United States v. Heinemann</u>, 801 F.2d 86, 93

(2d Cir. 1986)).  "Once a conspiracy is shown to exist, the evidence sufficient to link another defendant to it need not be overwhelming." United States v. Casamento, 887 F.2d 1141, 1156 (2d Cir. 1989), cert. denied, 479 U.S. 1017, 107 S.Ct. 668, 93 L.Ed.2d 720 (1986).  "A lack of evidence connecting one defendant with others does not preclude a determination that all the defendants were coconspirators . . . so long as each defendant knew from the scope of the operation that others were involved in the performance of functions vital to the success of the endeavor."  Id. at 1157-58.

All of the evidence of which Powell complains involved his alleged coconspirators.  The evidence of the Barnum Conspiracy and the Bronx seizure involved Aaron Harris, who the government alleged was Powell's coconspirator in counts two, three, thirteen, and racketeering acts 1-A, 1-C, 2-A, and 3.  The evidence of the Bronx seizure also involved Kenneth Richardson, who the government alleged was Powell's coconspirator in counts two and six.  Likewise, the government alleged that the Jones Brothers were Powell's coconspirators in count two and racketeering act 1-C in count 1.  In addition, the government alleged that Lance Jones was Powell coconspirator in count six.  Because these individuals were Powell's alleged coconspirators, the evidence of their activity was relevant and admissible under Fed. R. Evid. 403 as proof of Powell's involvement in the

conspiracies of which he was charged.  See <u>Iannelli v. United States</u>, 420 U.S. 770, 777 n. 10, 95 S.Ct. 1284, 1289 n. 10, 43 L.Ed.2d 616 (1975) (stating that because a conspiracy is, by its nature, clandestine, a conspiracy is often be proved by circumstantial evidence).  Thus, it was appropriate for the jury to consider this evidence in determining Powell's guilt or innocence with regard to the charged conspiracies.[2]

Moreover, the jury's verdict belies Powell's claims of prejudice.  After weighing the evidence of the drug-related activities at the P.T. Barnum Housing Project in racketeering act 1-C, the jury found that the government failed to prove Powell's

---

[2]  For example, as to racketeering act 1-C, the court charged the jury that:
> [A] defendant need not have joined in all the conspiracy's unlawful objectives.  The extent of a defendant's participation has no bearing on the issue of the defendant's guilt.  Indeed, each member may perform separate and distinct acts, and may have performed [them] at different times.  Some conspirators play major roles, others play minor parts in the scheme.  An equal role is not what the law requires.

In addition, the court's charge with regard to the conspiracies stated that:
> Further, when people enter into a conspiracy to accomplish an unlawful end, they become agents or partners of one another in carrying out the conspiracy.  Accordingly, in determining the factual issues before . . . you, you may consider as evidence against the defendant . . . any acts or statements made by any of his co-conspirators, even though such acts or statements were not made in his presence, or were made without his knowledge.

involvement in the Barnum Conspiracy.  This verdict demonstrates that the jury distinguished between the activities of Powell and those of his alleged coconspirators.  Therefore, the court finds that the admission of evidence of the Barnum Conspiracy, the activities of the Jones Brothers, and the Bronx seizure was not a "manifest injustice," see Ferguson, 246 F.3d at 134, and declines to order a new trial.

    B.    Sufficiency of Evidence for Conspiracy to Murder the Terrace Crew Members

Powell next argues that the court should vacate the jury's verdict finding him guilty of racketeering act 3 for conspiracy to murder the Terrace Crew members.  The court is not persuaded by Powell's claims.

In addition to charging Powell with conspiracy to murder the Terrace Crew members as a racketeering act, the indictment alleged as racketeering acts 4-A, 4-B, and 4-C, that Powell murdered Kevin Guiles, attempted to murder Brian Matthews, and attempted to murder Kendall Willis.  The jury found Powell not guilty on all three of these racketeering acts. According to Powell, the jury could not have reasonably found that the government proved racketeering act 3, the conspiracy to murder the Terrace Crew members, while also finding that the government did not prove either the murder or attempted murder of the Terrace Crew members.  Again, the government fails to address

this argument. Nonetheless, Powell's argument that the jury could not have convicted him of conspiracy if it did not also convict him of the objectives of that conspiracy is contrary to well-settled law.

"It has been long and consistently recognized . . . that the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses." <u>Pinkerton v. United States</u>, 328 U.S. 640, 643 (1946). As such, the jury was correctly charged to consider conspiracy and the underlying objectives of that conspiracy as separate crimes:

> The crime of conspiracy to violate a federal law is an independent offense. It is separate and distinct from the actual violation of any specific federal law, which . . . the law refers to as substantive crimes. Indeed, you may find a defendant guilty of conspiracy to commit an offense against the United States even though the substantive crime which was the object of the conspiracy, was not actually committed, or it may have failed.

The jury was presented with sufficient evidence that Powell, along with one or more of his coconspirators, Aaron Harris, Damon Walker, and Craig Baldwin, conspired to murder the Terrace Crew members. That evidence demonstrated a rivalry between Powell and his coconspirators and the Terrace Crew members that violently escalated due to personal vendettas and drug-related turf wars. Specifically, the government presented the testimony of multiple witnesses, including Robert Rogers, Issac Wadsworth, Takiyah Cato, and Sean Valentine, that detailed multiple altercations and

shootings between Powell's coconspirators and the Terrace Crew members.  One witness, in particular, Tawanna Allen, implicated Powell by describing a conversation she had with Powell and Aaron Dennis outside of the Pequonnock Housing Project where Brian Matthews, a member of the Terrace Crew, stayed.[3]  During that conversation, Dennis asked Allen to prop open the back entrance to a building at the Pequonnock Housing Project to provide Dennis admittance later that night.  Allen agreed and propped open the door when she left the building that evening.  Later that night Matthews was found murdered in the Pequonnock Housing Project.  Viewed in total, this evidence sufficiently supported the jury's finding that Powell conspired to murder the Terrace Crew members beyond a reasonable doubt.  Therefore, the court declines to order a new trial under Rule 33(a) on this ground.

    C.   <u>Sufficiency of the Evidence for Obstruction of Justice</u>

Powell also argues that the evidence was insufficient to support a conviction for obstruction of justice by tampering with a witness as alleged in count nine and racketeering act 5 and maintains that the court should enter a verdict of not guilty on count nine and strike racketeering act 5 as a supporting predicate for the RICO and RICO conspiracy crimes alleged in

---

   [3] Allen had previously testified before the grand jury that the individual who was with Powell when the conversation occurred was Aaron Harris, Powell's coconspirator.  At trial, however, she stated that she erred in her testimony before the grand jury, and that the individual with Powell was actually Aaron Dennis.

counts one and two.[4]  The allegations supporting these charges are that Powell obstructed justice by threatening Jose Osorio ("Osorio"), a drug dealer involved with Powell, to prevent Osorio from continuing to cooperate with law enforcement.  Again, the government does not respond to Powell's argument.  The court, however, finds that Powell's obstruction of justice charge was sufficiently supported by the evidence and declines to order a new trial.

At trial, Osorio testified that he encountered Powell at the Bridgeport Correctional Center ("BCC") in February 2000, and Powell threatened him by saying that he would not be safe if he

---

[4] Although Powell filed this motion as one for a new trial under Fed. R. Crim. P. 33, his requests to enter a verdict of not guilty on count nine and strike racketeering act 5 are more appropriate for a motion of acquittal under Fed. R. Crim. P. 29. Nonetheless, the court considers Powell's requests with respect to count nine and racketeering act 5 under the more lenient standard of review for a Rule 33 motion.  See Ferguson, 246 F.3d at 134 (noting that the court has broader discretion to grant a new trial under Rule 33 than to order an acquittal under Rule 29).  If his motion for a new trial fails – as it must based on the evidence presented at trial – then Powell's requests for acquittal with respect to count nine and racketeering act 5 must also fail.

cooperated with the government.[5]  Powell does not dispute that this incident, if it occurred, would be sufficient to support the jury's finding that Powell obstructed justice, as alleged.[6] Instead, Powell contends that this evidence was insufficient to support the jury's verdict because "the evidence clearly show[s] that Mr. Powell was not at [the BCC] at the time Mr. Orsorio claims that this [alleged intimidation] took place."  Powell seems to base his contention on the testimony of Officer Henry Falcone of the Connecticut Department of Corrections ("Falcone"). Relying on information gleaned from records of the Department of Corrections, Falcone testified that Powell was held at the BCC

---

[5]  Osorio testified that Powell said:
> It ain't like no one gonna ever know [you are cooperating] because they got paperwork so they know who is talkin', who's not talkin['], and you know – they gonna know everybody names, so you ain't gonna be safe or nothin'. So, I don't know why, you know, everyone thinkin' they're talkin' they're gonna be safe, like you're gonna be private forever. They're gonna eventually know.

[6]  Osorio testified that he understood Powell's "threat" to mean that he "would get hurt in jail or either on the streets." This interpretation is certainly reasonable.  Powell's statement that "it ain't like no one gonna ever know" that Osorio was cooperating with the government and that Osorio "ain't gonna be safe or nothin'" or "gonna be private forever" implies a threat of physical violence; the statement that "they gonna know everybody names" and "[t]hey're gonna eventually know" implies that individuals would be willing to enforce the threat. Osorio's testimony thus constitutes the "competent, satisfactory and sufficient evidence" in the record that must support a jury verdict to withstand a motion for a new trial.  See Ferguson, 246 F.3d at 134.

from December 5, 2000 until March 28, 2002, and that Osorio was at the same facility from October 12, 2000 until April 16, 2001. Falcone's testimony conflicted with Osorio's testimony only to the extent that Osorio claimed that the encounter with Powell occurred at the BCC in February 2000.  Thus, according to Falcone, the alleged obstruction could have only occurred between December 5, 2000 and April 16, 2001.

But this discrepancy does not warrant a new trial.  It is possible that the jury credited Osorio's account, including his testimony about the date of the encounter with Powell.  It is just as possible that the jury believed that the encounter with Powell occurred as Osorio testified, but that Osorio was wrong about the date of the encounter.  At any rate, both Osorio and Falcone testified that Powell and Osorio were held at the BCC during the five month period beginning December 5, 2000. Regardless of which possible scenario the jury believed, Powell's objection to this discrepancy in the evidence goes to the credibility of Osorio and Falcone's respective testimony, rather than to the sufficiency of the evidence.  Because the court must "defer to the jury's resolution of conflicting evidence and assessment of witnesses' credibility" except in extraordinary circumstances, See Ferguson, 246 F.3d at 133-34, the court declines to second guess the jury's conclusion.

Even if the court were to credit Falcone's testimony over

Osorio's, however, a new trial would still be inappropriate because Falcone's testimony bolstered Osorio's account of the encounter with Powell.  Falcone testified that the BCC has a recreational facility, which is where Osorio alleged the encounter took place, and Falcone stated that given the freedom of movement afforded prisoners, Osorio and Powell could have met at that recreational facility.  Therefore, jurors could have reasonably credited Osorio's description of Powell's efforts to intimidate him, despite his error about the date of the encounter.  Given the totality of the evidence on this issue, it was reasonable for the jury to conclude beyond a reasonable doubt that Powell intimidated Osorio during the five months that the two prisoners were held at the BCC.

    D.   <u>Sufficiency of Evidence of the Crack Cocaine Conspiracy</u>

Powell finally claims that the government failed to present any evidence that the substance distributed as part of the charged "East Side Conspiracy" or "Greens Homes Housing Project Conspiracy" was crack cocaine, that is, cocaine base within the meaning of 21 U.S.C. § 841(b)(1)(A)(iii).  Specifically, Powell maintains that the government's evidence was insufficient to prove that the substance was crack cocaine because the DEA's forensic chemist testified that the results of the tests he performed on the seized cocaine were consistent with cocaine in its naturally occurring alkaloid form, and that the substance was

not necessarily crack cocaine.  Thus, Powell argues that the government failed to produce any reliable, direct evidence concerning drugs seized from the various trafficking operations.

Powell cites no authority that requires the government to prove a drug conspiracy by direct scientific evidence rather than circumstantial evidence.  As the government points out, federal law does not generally distinguish between direct and circumstantial evidence, and permits a conviction based solely on the latter.  See United States v. Alameh, 341 F.3d 167, 173 (2d Cir. 2003).  Indeed, the Supreme Court has "never questioned the sufficiency of circumstantial evidence in support of a criminal conviction, even though proof beyond a reasonable doubt is required."  Desert Palace, Inc. v. Costa, 539 U.S. 90, 100 (2003).  Nor has this general principle been abandoned for drug prosecutions.  In United States v. Crisp, 563 F.2d 1242 (5th Cir. 1977), the court held that "[t]he nature of a narcotic drug . . . may be established by circumstantial evidence, so long as the drug's identity is established beyond a reasonable doubt."  See id. at 1244.  Although laboratory testing may be quite helpful to the jury in resolving reasonable doubts the jurors may have, such scientific procedures are not essential for the government to prove the existence of an agreement to distribute a particular type of narcotic.  See Desert Palace, 539 U.S. at 100.

Even in the absence of such scientific testing on the seized

-14-

narcotics, the circumstantial evidence presented by the government during Powell's trial was so extensive that a reasonable jury could find beyond a reasonable doubt that Powell conspired to distribute crack cocaine.  Two experienced police officers, William Mayer ("Mayer") and Glen Cassone ("Cassone"), both examined drugs seized during the arrests of various members of the drug-trafficking ring.  Mayer testified that cocaine is a pure, white powder, while crack cocaine is a chunkier, off-white substance, and based on his 18 years of experience, the substances recovered were crack cocaine.  Cassone also testified that the drugs seized were "rocky" substances consistent with crack cocaine.  In addition, both officers conducted chemical field tests on the substances which yielded positive results for crack cocaine.

   The central role of crack cocaine in the drug-trafficking operation was also demonstrated by the testimony of four different drug dealers who described the drug and its packaging.  Jose Osorio, Oretegus Eaddy, John Glover, and Quadan Thompson each testified that they sold pink-top vials filled with crack as part of the drug-trafficking conspiracy.  In sum, the testimony of these six witnesses, including two experienced police officers who conducted field chemical tests, is more than sufficient to prove beyond a reasonable doubt that Powell conspired to distribute crack cocaine, and thus there is no basis for the

court to overturn the jury's verdict on counts three and four.

## CONCLUSION

For the foregoing reasons, the court denies Powell's motion for a new trial [dkt. # 1872].

_____
Alan H. Nevas
United States District Judge