# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | No. 3:99-cr-264-18 (VAB) |
| QUINNE POWELL, *Defendant*. | |

## ORDER AND RULING ON FIRST STEP ACT MOTION FOR IMMEDIATE RELEASE OR RESENTENCING

Quinne Powell ("Defendant") moves for his immediate release or resentencing under Section 404 of the recently-enacted First Step Act. *See* Motion for Relief Under the Retroactive First Step Act, dated Jan. 4, 2019 ("Def.'s Mot."), ECF No. 2473; *see also* Memorandum in Support of First Step Act Motion, dated June 28, 2019 ("Def.'s Mem."), ECF No. 2525. Currently, Mr. Powell is serving five concurrent life sentences of imprisonment, *see* Judgment as to Quinne Powell, dated June 6, 2005 ("Judgment"), ECF No. 2002, and is incarcerated at FCI Hazelton in Bruceton Mills, West Virginia. *See* First Step Act of 2018 Addendum to the Presentence Report, dated May 17, 2019 ("First Step Supp. PSR"), ECF No. 2502 at 4.

The United States of America (the "Government") opposes Mr. Powell's motion. Government's Opposition to Def.'s Mot., dated Aug. 9, 2019 ("Gov't Opp."), ECF No. 2550.

On September 10, 2019, the Court held a hearing on the motion. Minute Entry, dated Sept. 9, 2019, ECF No. 2577.

For the reasons explained below, the Court (1) **GRANTS** the motion for relief under the First Step Act; (2) **ORDERS** that Mr. Powell's sentence of incarceration be **REDUCED** to **TIME SERVED**; (3) **RE-IMPOSES** a term of supervised release of **FIVE (5) YEARS**. The Bureau of Prisons is authorized to delay execution of this Order for up to ten (10) days after its

1

issuance so that the Bureau may make necessary arrangements related to Mr. Powell's release. The Bureau of Prisons is directed to proceed as expeditiously as possible so as to avoid any unnecessary delay.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Because of his involvement with and leadership of an extensive and violent drug trafficking enterprise in Bridgeport, CT, *see* Gov't Opp. at 1, Mr. Powell has been in federal custody for about nineteen years.

On October 16, 2003, a federal grand jury indicted Mr. Powell and other alleged members of the drug trafficking enterprise on various conspiracy charges and racketeering acts. *See* Seventh Superseding Indictment, dated Oct. 16, 2003, ECF No. 1560.

On June 3, 2005, after a month-long trial in the United States District Court for the District of Connecticut before the Honorable Alan H. Nevas, a jury convicted Mr. Powell of violating 18 U.S.C. § 1962(c), Racketeering in Corrupt Organizations ("RICO") (Count One); 18 U.S.C. § 1962(d), RICO Conspiracy (Count Two); 21 U.S.C. §§ 841(a)(1), 841 (b)(1)(A), and 846, Conspiracy to Possess With Intent to Distribute 50 Grams or More of Cocaine Base (Counts Three, Four, and Six); 18 U.S.C. § 1512(b)(3), Obstruction of Justice and Witness Tampering (Counts Nine and Twelve); and 18 U.S.C. § 1956(a)(1), Conspiracy to Commit Money Laundering (Count Thirteen). Jury Verdict, dated June 6, 2005, ECF No. 1860.

The jury found Mr. Powell guilty of various racketeering acts underlying Count One: several different drug conspiracies, conspiracy to murder the Trumbull Gardens Terrace ("the Terrace") crew members and associates, and obstruction and witness tampering. Jury Verdict at 1-3. They did not find him guilty of conspiracy to murder or the attempted murder of Jermaine Jenkins under Racketeering Act 2, nor they find him guilty of Racketeering Act 4, which was the

murder of Kevin Guiles and the attempted murders of Brian Matthews or Kendall Willis. *Id.* at 2-3. Additionally, the jury agreed that the defendant was guilty of possessing 50 grams or more of crack cocaine, but they did not agree on a specific quantity. *Id.* at 4 (handwritten "unable to agree" next to the quantity indicators).

On December 21, 2005, Judge Nevas sentenced Mr. Powell to the maximum of life imprisonment on Counts One, Two, Three, Four and Six; ten years imprisonment on Counts Nine and Twelve; and twenty years imprisonment on Count Thirteen. *See* Judgment. The terms of imprisonment were to all run concurrently with each other. *Id*. Judge Nevas also imposed a fine of $100,000. *Id.*

On January 9, 2006, Mr. Powell appealed his conviction and sentence. Notice of Appeal, dated Jan. 9, 2006, ECF No. 2006. The Second Circuit Court of Appeals affirmed the conviction, but remanded the case back to the District Court in order to clarify the basis for imposing a fine on Mr. Powell. *United States v. Walker*, 262 F. App'x 303, 309 (2d Cir. 2008) (finding that the District Court erred in imposing the fine without explaining the reasons for the fine or why it found that Mr. Powell had the ability to pay the fine).

Subsequently, on April 10, 2008, Judge Nevas amended the judgment and eliminated the $100,000 fine. *See* Amended Judgment, dated April 10, 2008, ECF No. 2135.

Over the years, Mr. Powell has pursued various forms of relief in the civil and criminal justice systems, all of which were unsuccessful. *See* Ruling on Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, dated June 2, 2011, *Powell v. United States*, No. 9-cv-2141, ECF No. 21; Consolidated Ruling, dated Aug. 30, 2012, *Powell v. United States*, No. 9-cv-2141, ECF. No. 36; Order Denying Motion for Intervening Authority, dated Jan. 6, 2014, *Powell v. United States*, No. 9-cv-2141, ECF No. 41; Ruling Denying Motion to Alter

Judgment and Amend Judgment, dated Jan. 8, 2014; *Powell v. United States*, No. 9-cv-2141, ECF. No. 42; Order and Ruling Denying Motion for Reconsideration and Denying Motion for Hearing, dated Oct. 10, 2014, *Powell v. United States*, No. 9-cv-2141, ECF No. 45; Order Denying Motion for Certificate of Appealability, dated Dec. 29, 2014, *Powell v. United States*, No. 9-cv-2141, ECF No. 51; Mandate of USCA, dated May 20, 2015, *Powell v. United States*, No. 9-cv-2141, ECF No. 53.

On December 21, 2018, Congress passed, and the President of the United States, Donald J. Trump, signed into law, the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (hereafter, the "First Step Act"), which "made retroactive some provisions of the Fair Sentencing Act [of 2010, Pub. L. 111-220; 124 Stat. 2372]." *United States v. Bobby Medina*, No. 3:05-cr-58, 2019 WL 3769598, at *2 (D. Conn. July 17, 2019).

On January 4, 2019, Mr. Powell moved for his immediate release or resentencing under Section 404 of the First Step Act. *See* Def.'s Mot.

On May 17, 2019, the U.S. Probation Office filed a supplemental Pre-Sentencing Report, and took the position that Mr. Jones was not entitled to relief under the First Step Act. *See* First Step Supp. PSR.

On June 28, 2019, Mr. Powell filed a memorandum in support of his motion. Def.'s Mem.

On August 9, 2019, the Government opposed Mr. Powell's motion. Gov't Opp.

On August 23, 2019, Mr. Powell filed a reply in further support of his motion. Reply Memorandum in Further Support of First Step Act Motion, dated Aug. 23, 2019 ("Def.'s Reply"), ECF No. 2557.

During his period of incarceration, Mr. Powell has participated in and received certificates indicating the completion of thirty-eight programs. *See* Def.'s Reply at 16 (referring to Exhibit 3's Bureau of Prisons Progress Report and Exhibit 4, which includes the different certificates). He also has not received a single disciplinary citation. Def.'s Mem. at 1, 6.

On September 10, 2019, the Court held a hearing on the motion. Minute Entry, dated Sept. 9, 2019, ECF No. 2577.

## II.    STANDARD OF REVIEW

Enacted in 2018, "Section 404 of the First Step Act authorizes retroactive application of Sections 2 and 3 of the Fair Sentencing Act to defendants who were sentenced for crack cocaine offenses committed prior to August 3, 2010." *United States v. Jamel Williams* ("*J. Williams*"), No. 03-CR-795, 2019 WL 3842597, at *2 (E.D.N.Y. Aug. 15, 2019). The Fair Sentencing Act in 2010 "'reduced [future] statutory penalties for cocaine base[] offenses' in order to 'alleviate the severe sentencing disparity between crack and powder cocaine.'" *Medina*, 2019 WL 3769598, at *3 (quoting *U.S. v. Sampson,* 360 F. Supp. 3d 168, 169 (W.D.N.Y. Mar. 13, 2019)); *see also* Fair Sentencing Act of 2010, Pub. L. No. 220; 124 Stat. 2372.

"Specifically, section 404 of the First Step Act permits 'a court that imposed a sentence for a covered offense' to 'impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed.'" *United States v. Lawrence Williams* ("*L. Williams*"), No. 03-CR-1334, 2019 WL 2865226, at *2 (S.D.N.Y. July 3, 2019) (quoting First Step Act § 404).

"The First Step Act does not mandate sentence reductions for defendants" who are eligible for relief. *United States v. Glore*, 371 F. Supp. 3d 524, 527 (E.D. Wis. Mar. 6, 2019). Instead, "it leaves to the court's discretion whether to reduce their sentences." *Id.*; *see also United*

*States v. Rose*, 379 F. Supp. 3d 223, 233 (S.D.N.Y. May 24, 2019) ("Congress clearly intended relief under § 404 of the First Step Act to be discretionary, as the Act specifically provides that '[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section.'") (quoting First Step Act, § 404(c)).

## III.   DISCUSSION

Because Mr. Powell has already served his full ten-year term of imprisonment for Counts Nine and Twelve for obstruction of justice and witness tampering, sentences which ran concurrently to his term of imprisonment on the drug conspiracy charges, the Court need not address those sentences here.

The threshold issue is Mr. Powell's eligibility for relief, which requires the Court to determine firs whether he was convicted of a "covered offense" under Section 404 of the First Step Act. If Mr. Powell is eligible for relief, the Court then must determine whether its discretion should be exercised to reduce his current sentence and, if so, by how much.

### A.  Covered Offense

Section 404(a) of the First Step Act defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372), that was committed before August 3, 2010." First Step Act § 404(a).

This language does not, on its face, restrict eligibility to defendants who were only convicted of a singular violation of a federal criminal statute whose penalties were modified by section 2 or section 3 of the Fair Sentencing Act. So long as a defendant was convicted of "a violation"—i.e., at least one violation—for which the penalties were modified by section 2 or 3 of the Fair Sentencing Act, he or she is eligible for relief under the First Step Act.

And various courts agree that the First Step Act should be construed broadly. *See, e.g.*, *Rose*, 379 F. Supp. 3d at 229 ("Both the Fair Sentencing Act and the First Step Act have the remedial purpose of mitigating the unfairness created by the crack-to-powder cocaine ratio."); *see also United States v. Allen*, No. 96-cr-149, 2019 WL 1877072 (D. Conn. Apr. 26, 2019). Additionally, as a multitude of district courts across the country have now recognized, "[i]t is the statute of conviction, rather than a defendant's actual conduct, that determines a defendant's eligibility under the First Step Act." *L. Williams*, 2019 WL 2865226, at *2 (S.D.N.Y. July 3, 2019) (citing *Rose*, 379 F. Supp. 3d at 228–31); *United States v. White*, No. 99-CR-628-04, 2019 WL 3228335, at *2 n.1 (S.D. Tex. July 17, 2019) (collecting forty-one district court cases reaching this conclusion); *see also United States v. Boulding*, 379 F. Supp. 3d 646, 651 (W.D. Mich. May 16, 2019) ("[E]ligibility under the language of the First Step Act turns on a simple, categorical question: namely, whether a defendant's offense of conviction was a crack cocaine offense affected by the Fair Sentencing Act. If so, the defendant is categorically eligible for consideration regardless of actual quantities. The particular quantities affect only the Court's discretionary call on whether to grant a reduction in sentence . . . . For purposes of eligibility alone, quantity determinations are unnecessary. The statute rests eligibility on the nature of a defendant's prior conviction: specifically, whether it was a 'covered offense.'"); *but see White*, 2019 WL 3228335, at *5 ("Only a few courts have sided with the government's position that eligibility turns on the defendant's actual conduct, rather than the charged offense . . . .") (collecting cases).

Eligibility for relief under the First Step Act thus turns not on whether a conviction, even if it incorporates several violations of criminal statutes, may be construed as a whole as a "covered offense," but whether there is a conviction of a violation of a criminal statute for which

the statutory penalties were modified by section 2 or 3 of the Fair Sentencing Act. Importantly, "[t]he Fair Sentencing Act modified the penalties for a crime involving 50 grams or more of crack cocaine and, therefore, that crime is a 'covered offense' for purposes of the First Step Act." *Medina*, 2019 WL 3769598, at *2 (quoting First Step Act § 404(a)).

The Government concedes that Mr. Powell's conviction involved a single drug type, cocaine base, or crack cocaine, which is a "covered offense" under the First Step Act. *See* Gov't Opp. at 14.

Nevertheless, the Government argues that Mr. Powell is ineligible for relief under the First Step Act for two reasons.

First, the Government argues that Mr. Powell is ineligible because he was also convicted of RICO and RICO Conspiracy (Counts One and Two), obstruction of justice and witness tampering (Counts Nine and Twelve), and conspiracy to commit money laundering (Count Thirteen), and the statutory penalties for these crimes were not changed by Sections 2 and 3 of the Fair Sentencing Act. Gov't Opp. at 17; *see also* First Step Supp. PSR at 3 ("It is the probation officer's view that the RICO and RICO Conspiracy penalties pertaining to Mr. Powell have not changed and remain a maximum of life because Racketeering Act 3 – Conspiracy to Murder continues to carry a maximum statutory penalty of life imprisonment. Thus, the penalties pertaining to the RICO and RICO Conspiracy counts have not been modified by Sections 2 or 3 of the Fair Sentencing Act of 2010.") Probation, however, concedes that Mr. Powell committed covered offenses under Counts Three, Four, and Six. *See* First Step Supp. PSR at 3-4 ("In the probation officer's opinion, as driven by the quantity of cocaine base found by the jury, the First Step Act does have the effect of lowering the statutory imprisonment penalty applicable to Mr. Powell on Counts 3, 4 and 6[.]").

Second, the Government argues that the focus should be on Mr. Powell's actual conduct or violation, instead of the statute cited in the charging document. *See* Gov't Opp. at 17-20. The temporal reference in Section 404(a)'s definition of a covered offense as a violation "that was committed before August 3, 2010" makes clear, the Government argues, that the First Step Act is referring to "something the defendant actually did . . . at a certain point in time." Gov't Opp. at 19. Additionally, the Government proffers that this reading of Section 404(a), to focus on the defendant's actual conduct, "makes more grammatical sense." *Id.*

Mr. Powell argues that Probation erred in concluding that Counts One and Two are not covered offenses. *See* Def.'s Reply at 2-3 (citing First Step Supp. PSR at 3). Probation asserted that a conviction of Racketeering Act 3 (conspiracy to commit murder) carried a maximum sentence of life imprisonment, *see* First Step Supp. PSR at 3, but, as the jury instructions make clear, Connecticut's state law crime of conspiracy provided the underlying offense for the Racketeering Act 3 conviction. *See* Jury Instructions. ECF No. 1866 at 99. Under Connecticut law, conspiracy to commit murder is a Class B felony that carries a maximum of twenty years, not life. Conn. Gen. Stat. § 53a-35a. Thus, Racketeering Act 3 does not expose Mr. Powell to a statutory maximum of life on his RICO convictions in Counts One or Two, but instead to a prison term of no more than twenty years.

The Court agrees.

As the Government concedes, if the Court finds that Counts Three, Four, and Six are covered offenses, then "it follows that Counts One and Two are also 'covered offenses' because the statutory maximum penalty on the RICO counts is tethered to racketeering act 1-A and 1-B, the crack-cocaine conspiracy counts." Gov't Opp. at 20; *see* Gov't Opp. at 20 n.8 ("Under Connecticut law, this [sic] a class B felony which carries a maximum penalty of 20 years'

incarceration. . . . Thus, in this case, the murder predicate act does not drive the RICO statutory maximum penalty.").

Counts Three, Four, and Six all involve drug conspiracy charges expressly linked to cocaine base or crack cocaine, *see* 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and 846. Thus they are "covered offenses" under the First Step Act. As a result, as even the Government recognizes, Counts One and Two, similarly premised on violations of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), are also "covered offenses" under the First Step Act.

The Government's first argument therefore is not a basis for denying Mr. Powell eligibility for relief under the First Step Act. *See Medina*, 2019 WL 3769598, at *4 (finding the defendant "eligible for relief under the First Step Act because he was convicted of a covered offense that was committed before August 3, 2010").

As to the Government's second argument, many district courts already have rejected it, *see, e.g.*, *Boulding*, 379 F. Supp. 3d at 651, including in this District. *See* Gov't Opp. at 18 n. 7. And, although the Government urges the Court to consider the monthly nine-kilogram quantity attributed to Powell in the Presentence Report, *id.* at 17, at sentencing, Judge Nevas did not adopt any specific quantity findings from the Presentence Report, nor did he attribute any quantity of crack-cocaine to Mr. Powell. *See* Def.'s Reply at 4-5 (citing Sent. Tr.). Indeed, the jury did not agree on a quantity finding. *See* Jury Verdict at 4. Thus, there is no quantity finding of crack-cocaine applicable to Mr. Powell.

In any event, eligibility for relief under the First Step Act should not be confused with an entitlement to a sentence reduction. As another district court in this Circuit has noted, "Congress clearly intended relief under § 404 of the First Step Act to be discretionary, as the Act specifically provides that '[n]othing in this section shall be construed to require a court to reduce

any sentence pursuant to this section.'" *Rose*, 379 F. Supp. 3d at 233 (quoting First Step Act, § 404(c)); *see also United States v. Mack*, No. 00-323-02, 2019 WL 3297495, at *12 (D.N.J. July 23, 2019) ("Finding these defendants eligible does not write off their responsibility for dealing in powder cocaine as well as dealing in crack cocaine. That constitutes a fact that bears on what relief these defendants are entitled to. What the Court finds now is that the jury's verdict does not disqualify the Mack defendants from consideration under § 404."); *United States v. Lewis*, No. CR 08-0057, 2019 WL 2192508, at *22, *30 (D.N.M. May 21, 2019) (finding defendant eligible for relief under the First Step Act but declining to reduce his sentence in light of a "disturbing" criminal history "filled with violence and bad behavior").

Accordingly, having been convicted of a "covered offense," Mr. Powell is eligible for relief under the First Step Act.

### B.  Scope of Relief

Having concluded that Mr. Powell is eligible for relief under the First Step Act, the Court now must determine whether a sentence reduction is appropriate and, if so, what reduction is appropriate.

The Government argues that the "authority of a district court to modify a prison sentence is narrowly limited by 18 U.S.C. § 3582, and a 'court may not modify a term of imprisonment once it has been imposed except that . . . the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute.'" Gov't Opp. at 21 (quoting 18 U.S.C. § 3582(c)(1)(B)). All the First Step Act permits, the Government insists, is "a limited exception, providing that the court may '*impose a reduced sentence* as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed.'" *Id.* (emphasis in original) (citing First Step Act § 404(b)).

The Government also argues that Mr. Powell's money laundering activity informed Judge Nevas's sentencing, and highlights Judge Nevas's focus on Mr. Powell's leadership role in the drug trafficking conspiracy. Gov't Opp. at 13. The Government further argues that Mr. Powell's life sentence "was driven not by the quantity of crack cocaine attributable to Powell, but, rather, by the violence Powell engaged in, and the need to keep the community safe." Gov't Opp. at 14. The Government emphasizes Mr. Powell's role as "the leader of a wide-ranging drug enterprise" who "engaged in violent acts," including conspiracy to commit murder. *Id.* at 16.

Mr. Powell argues that his sentence should be reduced, *see* Def.'s Reply at 7-10, and emphasizes having served over eighteen years and ten months in prison to date, which amount to approximately twenty-two years with good time credit. *Id.* at 7. Mr. Powell also disputes the Government's arguments with respect to violence, arguing that, although charged with additional acts of violence, "the jury acquitted him of each and every one." Def.'s Reply at 12. In addition, Mr. Powell's 2005 Sentencing Guidelines calculations erroneously classified him as if he had been convicted of committing a first-degree murder, when the jury actually convicted him of conspiracy to commit murder under Connecticut law, a crime with a statutory maximum sentence of twenty years imprisonment.

The Court agrees.

First, as to the issue of the scope of relief available to Mr. Powell, as the court in *Boulding* and many others have held, the First Step Act calls for a level of discretion that is previously unseen in sentencing statutes. *See* 379 F. Supp. 3d at 653 ("The First Step Act is different. The Sentencing Commission has nothing to do with it. Rather, Congress has directly authorized the possible reduction under 18 U.S.C. § 3582(c)(1)(B)."). The First Step Act does not "impose any extrinsic limits on a sentencing court." *Mack*, 2019 WL 3297495, at *12.

Indeed, Probation also notes that "the Act does not describe the scope of any resentencing or sentence modification proceeding." First Step Supp. PSR at 3.

Here, in accordance with U.S.S.G. § 3D1.2(c), all eight counts of conviction were grouped together, and the Sentencing Guidelines calculations for Count One and Counts Three, Four, and Six were used, because it resulted in the highest offense level of the counts in the group. 2005 PSR ¶ 74. As discussed above, all the covered offenses involve crack cocaine.

Probation calculated the offense level as follows. Because "certain victims of Racketeering Act 3 (Conspiracy to Murder Trumbull Gardens Terrace Crew Members and Associates), were murdered . . . the Cross Reference at § 2D1.1(d)(1) applies which directs the use of § 2A1.1(a) which calls for a base offense level of 43 in cases involving first degree murder." 2005 PSR ¶ 76.

| | Racketeering in Corrupt Organizations (Count One), RICO Conspiracy (Count Two), Conspiracy to Possess With Intent to Distribute 50 Grams or More of Cocaine Base (Counts Three, Four, and Six), Obstruction of Justice/Witness Tampering (Counts Nine and Twelve), and Conspiracy to Commit Money Laundering (Count Thirteen) |
|---|---|
| **BASE Offense Level** | **43** <br> (based on the murder of certain victims of Racketeering Act 3) |
| Specific Offense Characteristics | 0 |
| Adjustment for Role in Offense | + 4 <br> (leader and organizer of five or more people) |
| Adjustment for Use of Minor | + 2 <br> (minors were used in furtherance of the charged drug conspiracies) |
| Victim Related Adjustment | 0 |
| Adjustment for Obstruction of Justice | + 2 <br> (based on evidence that Mr. Powell witness tampered on two occasions) |
| **ADJUSTED Offense Level** | **51** |

*See* 2005 PSR ¶¶ 76–82.

Based on these findings, Probation determined the combined offense level to be 51 for all eight counts of conviction. *Id.* But because this level was in excess of 43, the Sentencing Guidelines required that Mr. Powell's offense level be reduced to 43. *Id.* ¶ 84; *see* USSG ch. 5, pt. A, cmt. n.2. Probation determined that Mr. Powell was in criminal history category I, as he had no prior convictions. 2005 PSR ¶ 85, 86.

The Sentencing Guidelines calculations then were applied to all the offenses of conviction, resulting in a life sentence for five counts. *See* 2005 PSR ¶¶ 104–05 (stating that the statutory provisions provided maximum terms of life imprisonment for Counts One, Two, Three, Four, and Six, a mandatory maximum of ten years imprisonment for Counts Nine and Twelve, and a mandatory maximum of twenty years imprisonment for Count Thirteen; and that the guideline provisions provided that "the guideline sentence is life"). At sentencing, Judge Nevas imposed the statutory maximum of imprisonment for all of these counts. *See* Sent. Tr. 31:15–20. These sentences all flowed from a single offense level and Sentencing Guidelines calculation determination, driven by the base offense level for the crack cocaine violation.

Judge Nevas imposed, in the singular, "a sentence of life in prison," *id.* at 32:17-21, and imposed the sentences of ten years for Counts Nine and Twelve and twenty years for Count Thirteen, concurrent to the life sentence. *Id.* at 32:31:15-20.

The RICO, RICO Conspiracy, obstruction of justice and witness tampering, and conspiracy to commit money laundering convictions thus were all addressed together, with the crack cocaine violation, as part of a single sentencing package, as inextricably related offenses. The Court thus has the authority to reduce Mr. Powell's entire sentence under the First Step Act. *See United States v. Triestman*, 178 F.3d 624, 630 (2d Cir. 1999) ("We therefore hold that the district court had the authority under § 2243 to dispose of the matter as law and justice require,

and that this authority included the power to resentence Triestman to the overall term that he would have received on his interdependent sentencing package absent his unlawful § 924(c) conviction."); *see also id.* at 631–32 (collecting cases).

Second, as to the specific relief, if any, appropriate for Mr. Powell, it is important for the Court to address first Mr. Powell's entitlement to have his life sentence reduced to no more than a term of forty years.

After the Fair Sentencing Act, the convictions under Counts Three, Four, and Six now mandate a statutory minimum of five years imprisonment and a statutory maximum of forty years. *See* 21 U.S.C. § 841; *see also* First Step Supp. PSR at 3 ("Using the drug quantity found by the jury, namely a minimum of 50 grams of cocaine base, had Section 2 of the Fair Sentencing Act of 2010 been in effect when Mr. Powell was originally sentenced, the statutory penalties would have been driven by 21 U.S.C. § 841(b)(1)(B), and principally included a mandatory minimum of 5 to 40 years imprisonment and a supervised release term of 4 years to life."). In other words, if Mr. Powell had been sentenced today for his cocaine base convictions, he could not have received a single sentence of more than forty years imprisonment.

The convictions under Counts One and Two, RICO counts related to the underlying drug conspiracy and the conspiracy to commit murder, also do not provide a basis for a life sentence. The statutory maximum and minimums for the RICO and RICO conspiracies in Counts One and Two are based on the underlying predicate acts. For the drug conspiracy racketeering acts, the modifications under the Fair Sentencing Act would not result in a sentence above the statutory minimum of five years and a statutory maximum of forty years imprisonment, a range no different from the statutory range for Counts Three, Four, and Six. *See* 21 U.S.C. § 841(b)(B).

As for the RICO conviction under Racketeering Act 3, a conspiracy to commit murder conviction requires a "violation of Connecticut General Statutes, Sections 53a-48(a) and 53a-54a4e," as the Government acknowledges. Gov't Opp. at 20 n.8. This state law violation "carries a maximum penalty of 20 years' incarceration. *Id.* (citing Connecticut General Statute 53a-51 (penalties for Attempt/Conspiracy)). As a result, as the Government concedes, "the murder predicate act does not drive the RICO statutory maximum penalty." *Id.* Put another way, the conspiracy to commit murder charge provides no basis for a sentence longer than twenty years.

Because none of his convictions now provide for a life sentence, Mr. Powell's sentence of life imprisonment must be reduced to no more than the highest sentence now possible: forty years.[1] The question remains, though, whether the sentence should be reduced further.

In the exercise of its discretion under Section 404(b) of the First Step Act, the Court will consider all of the factors under 18 U.S.C. § 3553(a) to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in (paragraph 2) of this subsection." *See Rose*, 379 F. Supp. 2d at 234 ("[E]ven if consideration of § 3553(a) factors is not expressly required by the First Step Act, the Court concludes that it is appropriate to use that familiar framework to guide the exercise of discretion conferred by the First Step Act."); *see also United States v. Romano*, 794 F.3d 317, 339 (2d Cir. 2015) (recognizing the relevance of the § 3553(a) factors in considering the length of a sentence). Under paragraph (2) of this subsection, the sentence must "reflect the seriousness of the offense, [] promote respect for the law, and [] provide just punishment for the offense," as well as "afford adequate deterrence to criminal

---

[1] While the Government argues that, to the extent that a term of forty years is appropriate, the Court should impose that term on each of the three underlying drug counts consecutively, that argument has no support in this record. Judge Nevas did not impose a consecutive sentence on any of Mr. Powell's criminal convictions. *See* 2005 Sent. Tr. 31: 16-20 ("The defendant is sentenced to the custody of the Bureau of Prisons for the rest of his life on Counts One, Two, Three, Four, and Six; ten years on Counts Nine and Twelve, and 20 years on Count Thirteen, all of these terms to run concurrently.").

conduct," "protect the public from further crimes of the defendant," and "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

In addition, the statute requires consideration of "the nature and circumstances of the offense and the history and characteristics of the defendant," "the kinds of sentences available," the relevant "sentencing range established" for the offense, and the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. §§ 3553(a)(1), (3),(4), and (6).

Having considered and weighed all of these factors, the Court concludes that Mr. Powell's sentence should be reduced to a term of twenty years, or 240 months, the maximum for the most violent crime he was convicted of, the conspiracy to commit murder charge (Racketeering Act 3 within Count One), and the maximum for his conspiracy to commit money laundering offense (Count Thirteen).

In doing so, the Court acknowledges the serious criminal behavior considered by Judge Nevas that prompted a life sentence:

> Now, you were acquitted of certain counts, but the jury did find you guilty of Racketeering Act III in the indictment, and Racketeering Act III was the conspiracy to murder The Trumbull Gardens Terrace Crew members and associates, and it's said in the indictment:
>> Beginning in or about the fall of 1995, and continuing to in or about March 1997, the exact dates unknown to the grand jury, in the District of Connecticut, the defendants, Quinne Powell, Aaron Harris, Damon Walker, and Craig Baldwin did knowingly and intentionally conspire and agree together, and with others known and unknown to the grand jury, to murder members and associates of a rival gang known as "The Trumbull Gardens Terrace Crew," in violation of Connecticut General Statutes.
> That's what the jury said you did, and I heard the evidence, and in the Court's view, on a preponderance of the evidence standard, you did it. You were engaged in these murders.

Sent. Tr. 29:24-30:20.

But the conspiracy to commit murder charge only carried a maximum term of imprisonment of twenty years, as the Government concedes. Just as importantly, as Mr. Powell points out, even if he had been convicted of and sentenced for murder, a term of 240 months is not inconsistent with the term of imprisonment given for that federal crime. *See* Def's Reply at 12 (In a 2017 study of federal sentences based on 2016 data, the Sentencing Commission noted that "[o]ffenders committing murder received the longest terms of confinement in fiscal year 2016, at 241 months on average."). Thus, under the 18 U.S.C. § 3553(a) factors, a sentence of more than 240 months could result in an unwarranted sentencing disparity for "defendants with similar records who have been found guilty of similar conduct," particularly since the underlying conduct of which Mr. Powell was convicted was conspiracy to commit murder, not murder. *Cf. United States v. Jenkins*, 854 F.3d 181, 193 (2d Cir. 2017) (recognizing that Sentencing Commission statistical data "readily available to the district court at the time of sentencing" may "allow for a meaningful comparison" of a defendant's conduct to other relevant offenders).

In considering the 18 U.S.C. § 3553(a) factors, Mr. Powell's rehabilitation efforts also warrants the reduction of his sentence to no more than twenty years, or 240 months. *See Pepper v. United States*, 562 U.S. 476, 491 (2011) ("[E]vidence of postsentencing rehabilitation may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed district courts to consider at sentencing."). In his almost nineteen years in prison, Mr. Powell has not received a single disciplinary violation. Def's Mem. at 26. Mr. Powell is currently employed as a Unit Orderly and has been employed throughout most of his incarceration. Def's Mem. at 26. Moreover, he has participated in approximately 3,500 hours of vocational training and has earned almost forty different certificates. *Id.*; *see also* Def.'s Reply, Exhibit 3: Bureau of Prisons Progress Report, (educational courses include psychology self-study, study of ethics, conflict

resolution, anger management, introduction to home inspection, and more); Def.'s Reply, Exhibit 4: Certificates of Completion, (includes certificates for multiple programs, such as AIDS Awareness Program, 12 Hour Chemical Hazards Course, 30 Hour Workplace Safety Course, 48 Hour Pest Control Course, 48 Hour Custodial Maintenance Course, Apprenticeship for Housekeeping, Basic Business Training, Basic Computer Training, Mavis Beacon Typing, and more).

Through its various educational and vocational opportunities, the Bureau of Prisons has helped put Mr. Powell on a path towards reform. Thus, further incarceration of Mr. Powell could be greater than necessary to serve the purposes of a criminal sentence. *See* 18 U.S.C. § 3553(a) (parsimony clause requiring the court to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection"); *see also Pepper*, 562 U.S. at 491 ("Postsentencing rehabilitation may also critically inform a sentencing judge's overarching duty under § 3553(a) to 'impose a sentence sufficient, but not greater than necessary,' to comply with the sentencing purposes set forth in § 3553(a)(2)."); *United States v. Ministro-Tapia*, 470 F.3d 137, 142 (2d Cir. 2006) ("[I]f a district court were explicitly to conclude that two sentences equally served the statutory purpose of § 3553, it could not, consistent with the parsimony clause, impose the higher.").

The Court has considered a variety of factors to reach its decision today, including the seriousness of Mr. Powell's underlying conduct as well as his use of prison time wisely, through participation in and completion of available educational and vocational programming, and his demonstrated compliance with the rules and regulations of the Bureau of Prisons.

Having weighed all of these factors, the Court finds that a reduction of Mr. Powell's term of imprisonment to no more than twenty (20) years, or 240 months, is appropriate and consistent with the current Sentencing Guidelines and the broad remedial purpose of the First Step Act.

But because Mr. Powell has already served 226 months in prison and the application of good-time credit to a term of years would exceed a sentence of twenty years or 240 months, and there is nothing in this record to suggest that good-time credit would not be applied to his current sentence, the Court accordingly reduces his sentence to "time served."

Judge Nevas imposed a term of supervised release of five years on Counts One, Two, Three, Four, and Six, and three years on Counts Nine, Twelve, and Thirteen, to be served concurrently in accordance with 18 U.S.C. § 3624(e). Sent. Tr. 32:4-16. A term of supervised release thus is appropriate. To the extent that a term of supervised release needs to be re-imposed, the Court does so now, with all the standard and mandatory conditions required under 18 U.S.C. § 3583(d) and USSG § 5D1.3.  If Mr. Powell were to violate any term of his supervised release, he will be subject to up to two (2) additional years of incarceration for each violation, without credit for any time already spent on supervised release.

**IV.    CONCLUSION**

For the reasons explained above, the Court (1) **GRANTS** the motion for relief under the

First Step Act; (2) **ORDERS** that Mr. Powell's sentence of incarceration be **REDUCED** to

**TIME SERVED** on all counts; (3) **RE-IMPOSES** a term of supervised release of **FIVE (5)**

**YEARS**. The Bureau of Prisons is authorized to delay execution of this Order for up to ten (10)

days after its issuance so that the Bureau may make necessary arrangements related to Mr.

Powell's release. The Bureau of Prisons is directed to proceed as expeditiously as possible so as

to avoid any unnecessary delay.

The Clerk of Court is respectfully directed to file an amended judgment and terminate the

case.

**SO ORDERED** at Bridgeport, Connecticut, this 3rd day of October, 2019.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE